**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ONORIO RAMOS,

    Plaintiff

v.

SABLES, LLC, et al.,

    Defendants

Case No.: 2:25-cv-00776-APG-BNW

**Order (1) Granting Wilmington's Motion to Dismiss, (2) Granting Deutsche Bank's Motion to Dismiss, (3) Granting Deutsche Bank's Motion to Expunge Lis Pendens, and (4) Granting Ramos Leave to Amend**

[ECF Nos. 38, 40, 41]

Plaintiff Onorio Ramos purchased a house in Las Vegas, Nevada in October 2005 with a residential mortgage loan secured by a deed of trust[1] from defendant Wilmington Finance, Inc. ECF No. 32 at 3. Ramos alleges that Wilmington was not properly licensed under Nevada law to loan the funds. *Id.* Ramos made his last mortgage payment in March 2009 and filed for bankruptcy in April 2011. *Id.* at 4. A few months later, through the bankruptcy proceedings, his personal loan obligations to Wilmington were discharged. *Id.* But the deed of trust was not affected by the bankruptcy discharge. *Id.*

Wilmington did not foreclose upon Ramos' house. *Id.* Instead, in January 2022, it assigned the deed of trust to Deutsche Bank National Trust Company. *Id.* Deutsche Bank later substituted defendant Sables, LLC as its trustee under the deed of trust. *Id.* at 5. Deutsche Bank, through Sables, then recorded a notice of breach and default in February 2025, seeking to

---

[1] I may consider documents not attached to the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy" provided. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). I consider the deed of trust because the complaint refers to it, it is central to Ramos' claims, and Ramos does not question the authenticity of the copy Deutsche Bank National Trust Company provided. ECF No. 32 at 3, 7-8, 11.

foreclose on the property unless Ramos paid Deutsche Bank $273,385.82, which constituted the original loan amount plus accrued interest. *Id.*; ECF No. 40-5.[2]

Ramos has lived in the house throughout the relevant time and continues to live there today. *Id.* at 4. He has spent time and funds to improve the house and has paid all property taxes since April 2009. *Id.* at 4; 8. But he has not made any mortgage payments in the last 17 years. *Id.* at 4. He alleges he has not received any periodic mortgage statements from Wilmington or Deutsche Bank since his bankruptcy discharge in July 2011. *Id.*

Ramos brings this action against Deutsche Bank, Wilmington, and Sables. He raises three claims to quiet title for the property against Deutsche Bank. First, he argues that the deed of trust is voidable under Nevada Revised Statutes (NRS) § 645B.920 because Wilmington was not licensed to issue the loan. Second, he argues that Deutsche Bank's opportunity to foreclose upon the property has expired under Nevada's ancient lien statute, NRS § 106.240. Third, he contends that he possesses the property through adverse possession. He asserts claims against Wilmington and Deutsche Bank for violating the Truth in Lending Act (TILA), breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and conspiracy to commit fraud against Deutsche Bank and Wilmington. He alleges Sables violated NRS § 107.028, which establishes trustees' duties under deeds of trusts. He also alleges that Deutsche Bank violated NRS § 107.200 et seq. by failing to provide a statement regarding the debt secured by the deed of trust after he requested that information.[3] He requests declarations that the

---

[2] I consider the notice of breach and default because the complaint refers to it, it is central to Ramos' claim that the accrued interest is unenforceable, and Ramos does not question the authenticity of the copy Deutsche Bank provided. ECF No. 32 at 5, 9; *see Marder*, 450 F.3d at 448.

[3] In his opposition to Wilmington's motion to dismiss, Ramos clarifies that he brings this claim only against Deutsche Bank. ECF No. 58 at 3 n.1.

defendants violated the listed statutes, that the deed of trust is expunged, and that Deutsche Bank cannot collect interest on the loan to stop the foreclosure sale. He seeks injunctive relief to enjoin the foreclosure sale. After filing his complaint, Ramos recorded a lis pendens against the property. ECF Nos. 1-1; 40-6.

Wilmington and Deutsche Bank move to dismiss, and Deutsche Bank moves to expunge the lis pendens. Ramos opposes dismissal, and in the alternative seeks to amend his complaint. I dismiss all claims and expunge the lis pendens, but grant Ramos leave to amend in part.

## I.    WILMINGTON'S AND DEUTSCHE BANK'S MOTIONS TO DISMISS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id*. at 555. Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id*. (simplified).

I must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). I consider "five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of

amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

**A. I dismiss Ramos' quiet title claim against Deutsche Bank in count one.**

Ramos raises three grounds to establish his clean and marketable title to the property. First, he argues that the deed of trust was discharged under NRS § 106.240, Nevada's ancient lien statute. Second, he seeks to void the deed of trust under NRS § 645B.920 because Wilmington allegedly was not licensed by Nevada to issue mortgage loans. Third, he argues he has obtained the property through adverse possession.

*1. I dismiss with prejudice Ramos' NRS § 106.240 claim against Deutsche Bank.*

Ramos alleges that his loan became "wholly due" under NRS § 106.240 more than ten years ago, which extinguishes the lien on the property created by the deed of trust. Specifically, he argues that acceleration of the entire loan amount must have occurred before issuing the notice of default in 2025 because the notice of default starts foreclosure proceedings, which seek payment of the entire debt prior to the stated maturity date. Deutsche Bank argues that Ramos' argument is foreclosed by the Supreme Court of Nevada's decision in *LV Debt Collect, LLC v. Bank of New York Mellon as Trustee for Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-02, Mortgage Pass-Through Certificates, Series 2005-02*, 534 P.3d 693 (Nev. 2023).

A Nevada lien created by a mortgage or deed of trust on real property is conclusively presumed to be discharged "10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due." NRS § 106.240. In *LV Debt Collect*, the Supreme Court of Nevada found that a debt "'become[s] wholly due'" under NRS § 106.240 "only 'according to' either of two things: (1) the

'terms thereof,' referring to the mortgage or deed of trust, or (2) 'any recorded written extension thereof.'" 534 P.3d at 697 (quoting NRS § 106.240). "Thus, when there is no recorded extension of the due date, the terms of the mortgage or deed of trust dictate when the debt becomes wholly due." *Id.* For example, recording a notice of default does not trigger § 106.240 to make a debt wholly due. *Id.* at 698. Merely defaulting on a loan does not trigger § 106.240. *ARNS Fund, LLC v. Bank of Am., N.A.*, 564 P.3d 46, 2025 WL 511457, at *1 (Nev. Feb. 14, 2025). A bankruptcy discharge also does not make a loan wholly due under § 106.240 absent terms in the deed of trust stating otherwise. *W. Coast Servicing, Inc. v. Kassler*, 531 P.3d 81, 2023 WL 4057073, at *1-2 (Nev. June 16, 2023). Ramos does not allege there was any recorded extension of this deed of trust's due date or that the deed of trust's terms made the debt wholly due on his bankruptcy discharge. The loan's maturity date is November 1, 2035, and thus it becomes wholly due then. ECF No. 40-1 at 3.

The deed of trust's terms belie Ramos' contention that the loan accelerated before the recording of the notice of default. The deed of trust permits Deutsche Bank to accelerate the loan only if Ramos fails to cure the default within 30 days of Ramos being given the notice of the default. ECF No. 40-1 at 14. Thus, acceleration could not have occurred by the time the notice was recorded because the earliest Deutsche Bank could accelerate the loan was 30 days after the notice was recorded. *See LV Debt Collect*, 534 P.3d at 698. This acceleration clause is nearly identical to the acceleration clause at issue in *LV Debt Collect. Compare id.* at 697 n.5, *with* ECF No. 40-1 at 14. In *LV Debt Collect*, the Supreme Court of Nevada held that the acceleration clause had not been triggered when the notice of default was recorded because the borrowers still had the opportunity to cure the default. 534 P.3d at 698; *Big Rock Assets Mgmt., LLC v. NewRez LLC*, 558 P.3d 1196, 2024 WL 4865435, at *2 (Nev. Nov. 21, 2024). Because

the loan did not become wholly due in *LV Debt Collect* under that deed of trust's acceleration clause when the notice of default was recorded, Ramos' loan also cannot have been accelerated here. *See Big Rock Assets Mgmt.*, 2024 WL 4865435, at *2.

Further, the Supreme Court of Nevada has essentially rejected Ramos' position that acceleration of the entire loan amount must have occurred prior to issuing the notice of default. It noted that "even if a deed of trust has an acceleration clause that authorizes the lender to accelerate a loan via a Notice of Default, such language would be invalid because" Nevada law "requires a Notice of Default to give a borrower 35 days to cure the default [after recording the notice], which is antithetical to the concept of 'accelerating' a loan." *LV Debt Collect*, 534 P.3d at 698. If a borrower has an opportunity to cure a default, the loan is not wholly due under § 106.240. *Big Rock Assets Mgmt.*, 2024 WL 48655435, at *2 (citing *LV Debt Collect*, 534 P.3d at 698).

Additionally, Ramos' vague allegation that something must have caused the loan to accelerate before recording the notice of default fails under *LV Debt Collect*'s logic. If recording a notice of default is insufficient to trigger NRS § 106.240, then it "stands to reason" that any necessary precondition to recording also cannot trigger it. *See ARNS Fund*, 2025 WL 511457, at *1. Therefore, I dismiss Ramos' quiet title claim under NRS § 106.240 with prejudice.

*2. I dismiss with prejudice Ramos' NRS § 645B.920 claim against Deutsche Bank.*

Ramos seeks to void the deed of trust under NRS § 645B.920, alleging that Wilmington was not properly licensed in Nevada before issuing the loan in 2005. Deutsche Bank, as the assignee of the deed of trust, argues that NRS § 645B.920 was enacted after Wilmington made the loan and is not retroactive, so it does not apply here.

Ramos argues that Deutsche Bank does not have "standing" to defend against his NRS § 645B.920 claim, even though he brings his quiet title claim against Deutsche Bank, because Wilmington made the loan. ECF No. 63 at 17.  Because Deutsche Bank, as Wilmington's assignee, "stands in the shoes" of Wilmington, and because voiding the deed of trust under NRS § 645B.920 would invalidate Deutsche Bank's interest in the property, I will consider its arguments. *Interim Cap. LLC v. Herr L. Grp., Ltd.*, No. 2:09-cv-01606-KJD-LRL, 2011 WL 7047062, at *6 (D. Nev. Oct. 21, 2011) (quotation omitted).

NRS § 645B.920 allows a party to void a contract for a mortgage transaction if the counterparty violates NRS § 645B.900.  Section 645B.900 mandates that mortgage companies and mortgage loan originators be licensed under Nevada law before issuing loans.[4]  Enacted in 2009, NRS § 645B.920 did not exist when Ramos obtained his loan from Wilmington in 2005. A.B. 486, 75th Leg., Reg. Sess. (Nev. 2009).  Thus, he can void his loan under NRS § 645B.920 only if that statute is retroactive.

Under Nevada law, I "generally presume that [newly enacted statutes] apply prospectively unless the [Nevada] Legislature clearly indicates that they should apply retroactively or the Legislature's intent cannot otherwise be met." *Valdez v. Emps. Ins. Co. of*

---

[4] Until 2020, NRS § 645B.900 applied only to mortgage brokers or mortgage agents. NRS § 645B.900 (2009).  A different statute mandated that mortgage bankers be licensed before issuing loans. NRS § 645E.900 (2005).  Chapter 645E had a penalty provision that, like NRS § 645B.920, was enacted in 2009 and allowed a party to void a contract if the mortgage banker was not licensed. NRS § 645E.920 (2009).  The Nevada Legislature repealed NRS Chapter 645E and incorporated its provisions into NRS Chapter 645B, which now applies to mortgage bankers. *Salvador v. Countrywide Home Loans, Inc.*, 489 P.3d 8, 2021 WL 2432432, at *2 n.4 (Nev. Ct. App. Jun. 14, 2021).  The revised NRS Chapter 645B was effective January 1, 2020. A.B. 468, 79th Leg., Reg. Sess. (Nev. 2017).  Insofar as the retroactivity of NRS § 645E.920 is relevant here, the analysis and conclusion are the same as § 645B.920's retroactivity.  Section 645E.920's text was nearly identical to § 645B.920; the only difference was that it ascribed a penalty for violating different licensing statutes. *Compare* NRS § 645B.920, *with* NRS § 645E.920 (2009).

*Nev.,* 162 P.3d 148, 154 (Nev. 2007) (en banc).  "However, statutes that do not change substantive rights and instead relate solely to remedies and procedure apply to any cases pending when enacted." *Salloum v. Boyd Gaming Corp.*, 495 P.3d 513, 516 (Nev. 2021) (simplified).

Section 645B.920's text is not clear that it applies retroactively.  Its full text is:

> If a person, or any general partner, director, officer, agent or employee of a person violates the provisions of NRS 645B.900 or 645B.910[5], any contracts entered into by that person for the mortgage transaction are voidable by the other party to the contract.

Section 645B.920 uses the present tense when ascribing a penalty for an actor that "violates" NRS § 645B.900, and "the present tense generally does not include the past" when interpreting statutes. *Carr v. United States*, 560 U.S. 438, 448 (2010).  If the Nevada Legislature intended the statute to apply retroactively, it could have used the past tense, such as ascribing the penalty for an actor who "has violated" NRS § 645B.900. *See Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 179 P.3d 542, 553 (Nev. 2008) (en banc) ("[W]hen the Legislature intends retroactive application, it is capable of stating so clearly.").

Retroactive application is not necessary to satisfy the Nevada Legislature's intent. Section 645B.920 was passed to create "appropriate penalties for a person who conducts unlicensed activity for which a license is required." *Nev. Assemb. Comm. Minutes, Apr. 3, 2009: Hearing on A.B. 486 Before the Assemb. Comm. on Com. & Lab.*, 75th Leg., 75th Sess. (Nev. 2009) (statement of Assemb. Marcus Conklin, Chairman, Assemb. Comm. on Com. & Lab.). Section 645B.900 created a licensure requirement to combat "predatory lending." *Nev. Assemb. Comm. Minutes, Apr. 4, 2003: Hearing on A.B. 490 Before the Assemb. Comm. on Com. & Lab.*, 72d Leg., 72d Sess. (Nev. 2003) (statement of Assemb. David Goldwater, Chairman, Assemb.

---

[5] NRS § 645B.910 is irrelevant to this action because it applies to foreign entities.

8

Comm. on Com. & Lab.). Applying § 645.920 only prospectively does not defeat its purpose and still disincentivizes predatory lending. *Cf. Holdaway-Foster v. Brunell*, 330 P.3d 471, 473-74 (Nev. 2014) (en banc) (holding that the federal Full Faith and Credit for Child Support Orders Act was retroactive because "strict prospective application would frustrate the Act's purposes" by allowing interstate conflicts regarding child support orders entered before enactment to persist).

Finally, § 645B.920 is substantive, not procedural. "[A] substantive standard is one that creates duties, rights, and obligations, while a procedural standard specifies how those duties, rights, and obligations should be enforced." *Griffith v. Rivera*, 555 P.3d 1171, 1173 (Nev. 2024) (quotation omitted). Section 645B.920 creates a right to void a contract regarding a mortgage transaction.

For these reasons, NRS § 645B.920 is not retroactive, and Ramos cannot invoke it to void his loan and deed of trust entered into before the statute's enactment. Accordingly, I dismiss his quiet title claim under NRS § 645B.920 against Deutsche Bank with prejudice.[6]

*3. I dismiss with prejudice Ramos' adverse possession claim against Deutsche Bank.*

Ramos seeks to quiet title through adverse possession under NRS § 40.090. Deutsche Bank argues Ramos fails to state a claim for adverse possession because his possession is not hostile.

---

[6] Ramos alleges that he also pleaded a claim for declaratory judgment against Wilmington centered on a violation of Chapter 645B. It is unclear if his complaint gave Wilmington fair notice that the claim was directed at it and not Deutsche Bank. To the extent Ramos properly pleaded a claim for declaratory judgment against Wilmington that it violated NRS § 645B, he has failed to state a claim for the reasons explained in this section. I dismiss that claim with prejudice.

9

"Adverse possession is a doctrine under which a person in possession of real property owned by someone else may acquire valid title" *Jones v. Ghadiri*, 546 P.3d 831, 835 (Nev. 2024) (en banc) (quotation omitted). "An adverse possessor is required to show that the occupation of the property is hostile, actual, peaceable, open, notorious, continuous and uninterrupted." *Id.* (simplified). "The possession, to be adverse, must be inconsistent with the title of the true owner, who is out of possession." *McDonald v. Fox*, 22 P. 234, 235 (Nev. 1889). There can be no adverse possession if the claimant's possession is with the permission of the owner of the property. *25 Corp. v. Eisenman Chem. Co.*, 709 P.2d 164, 171 (Nev. 1985). Under NRS § 40.090, a person claiming adverse possession must possess the property "continuously for more than 15 years prior to the filing of the complaint."

Although Ramos brings his quiet title claim against only Deutsche Bank, he argues that Wilmington must be the party to challenge his adverse possession claim. A successor in interest can properly defend against an adverse possession claim. *See Nev. Gold Mining Corp. v. Hygrade Gold Co. Ltd.,* 489 P.3d 915, 2021 WL 2769037, at *1-2 (Nev. Jul. 1, 2021); *Interim Cap. LLC*, 2011 WL 7047062, at *6 ("It is well established that an assignee 'stands in the shoes' of the assignor."). In fact, NRS § 40.090(2) requires a claimant to include in their complaint as defendants "all . . . persons who are known, or by the exercise of reasonable diligence could be known, to [the claimant] to have some claim to an estate, interest, right, title or cloud in or on the land describe in the complaint." Wilmington assigned its interest in the property to Deutsche Bank, and Deutsche Bank asserts a claim to the property. Thus, I will consider Deutsche Bank's motion to dismiss the adverse possession claim as a proper defendant to the claim.

The Supreme Court of Nevada has not decided when a mortgagor's possession of property becomes adverse or hostile to the mortgagee's. In the absence of controlling state law, I

must use my best judgment to predict how the state's highest court would decide the issue. *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).  I may look to intermediate appellate court decisions, statutes, and well-reasoned decisions from other jurisdictions for guidance. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

I predict that the Supreme Court of Nevada would rule that Ramos' possession of the property has not been adverse to Deutsche Bank because he is the mortgagor holding legal title to the property and his actions have not sufficiently repudiated the mortgage.  In Nevada, a mortgage is "considered merely a lien on the property as a security for the debt." *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012) (en banc).  "A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to take possession of the real property in absence of a foreclosure sale or in accordance with" other provisions of Nevada law. NRS § 40.050; *see Brockman v Ullom*, 299 P. 677, 678 (Nev. 1931) ("In this state a mortgage does not transfer the legal title to the mortgagee.").  The "title, which constitutes the legal right to control and dispose of the property, remains with the property owner until the lien is enforced through foreclosure proceedings." *Hamm v. Arrowcreek Homeowners' Ass'n*, 183 P.3d 895, 902 (Nev. 2008) (en banc) (simplified), *clarified on other grounds by Saticoy Bay, LLC, Series 9720 Hitching Rail v. Peccole Ranch Cmty. Ass'n*, 495 P.3d 492 (Nev. 2021).  In fact, the mortgagee "has no right to the possession" of the property "before foreclosure and sale." *Price v. Ward*, 58 P. 849, 851 (Nev. 1899).  The Supreme Court of Nevada has previously ruled that for a mortgagee to adversely possess a property from a mortgagor, the mortgagee must "repudiate[] the mortgage relationship" by giving "actual notice" that it "asserts an absolute right to the property independent of the mortgage." *Crumbaker v. Kelly*, 601 P.2d

1199, 1200-01 (Nev. 1979). That court likely would rule similarly when a mortgagor seeks to adversely possess property from a mortgagee.

Here, Ramos has retained legal title to the property since purchasing it in 2005. Foreclosure and sale have not occurred, so the right to control the property has never been transferred to either of the mortgagees. Therefore, his possession has not been inconsistent with Wilmington's or Deutsche Bank's security lien on the property. Ramos' actions have not sufficiently repudiated the mortgage relationship. Simply possessing and paying all taxes on the property, as Ramos has done, is insufficient to state a claim for adverse possession. *Wood Bro Cap., LLC v. Underwood*, No. 3:16-cv-00406-LRH-VPC, 2017 WL 2294086, at *3 (D. Nev. May 25, 2017); *see Crumbaker*, 601 P.2d at 1201 (holding that a mortgagee repudiated the mortgage relationship when the mortgagee placed a new tenant in the property, collected rent from the new tenant, and paid taxes on the property); *cf. U.S. Bank, N.A. as Tr. for Specialty Underwriting and Residential Fin. Tr. Mortg. Loan Asset-Backed Certificates Series 2006-BC4 v. Thunder Props., Inc.*, 503 P.3d 299, 302, 306-07 (Nev. 2022) (en banc) (holding that, for a lienholder's claim under NRS § 40.010 for declaratory judgment that a lien was not extinguished by a subsequent foreclosure sale of the property, "the limitations period does not begin to run until the lienholder receives notice of some affirmative action by the titleholder to repudiate the lien or that is otherwise inconsistent with the lien's continued existence").

Ramos' bankruptcy discharge did not make his possession adverse because those proceedings discharged only his personal obligation on the loan and did not invalidate any of the mortgagees' other rights, including their right to foreclose on the property. As Ramos states in his complaint, the deed of trust "was not affected by the bankruptcy discharge." ECF No. 32 at 4. The bankruptcy discharge "granted [him] a discharge under" the Bankruptcy Code without

12

mentioning Wilmington's security lien or the deed of trust. ECF No. 40-4 at 2.[7]  This is consistent with how the Bankruptcy Code generally affects mortgages.  The Supreme Court has stated that "the [Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  A Chapter 7 bankruptcy discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*" *Id.* at 84.  Therefore, despite the bankruptcy discharge, Ramos kept the legal title to control the property, and Wilmington retained its security lien on the property, which it assigned to Deutsche Bank.  Accordingly, his on-going possession has not been inconsistent with the mortgagees' interest in the property.

California is an apt state for comparison.  In California, like Nevada, a mortgage creates only a security lien on a property. Cal. Civ. Proc. Code § 744; Cal. Civ. Code § 2927.  NRS § 40.050 was modeled after California's statutes. *Douglass v. Thompson*, 127 P. 561, 563 (Nev. 1912) (discussing Nev. Rev. Laws, § 5518, a prior version of NRS § 40.050).  And under California law, "[a] mortgagor or his grantee in possession or mortgaged property may not set up the statute of limitations against the mortgagee" to establish adverse possession because "the possession of the mortgagor is presumed to be amicable and in subordination to the mortgage." *Laubisch v. Roberdo*, 277 P.2d 9, 12 (Cal. 1954).  More recently, a district court interpreting California law held that a mortgagor's possession does not become adverse to the mortgagee's "until foreclosure, and in the instant case, the delivery of the trustee's deed." *Hart v. Select*

---

[7] I take judicial notice of the Order of Discharge in Ramos' bankruptcy because it is a proceeding from another court directly related to this action and Ramos does not dispute its authenticity. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

*Portfolio Servicing, Inc.*, No. CV 15-7953-R, 2015 WL 8374926, at *2 (C.D. Cal. Dec. 9, 2015) (simplified).[8]

Therefore, I predict that the Supreme Court of Nevada would not find that a mortgagor's possession of a property is adverse to the mortgagee's prior to the foreclosure and sale of the property.[9] Ramos' possession of the property has not been adverse to Wilmington's or Deutsche Bank's interest in the property to trigger the adverse possession period under NRS § 40.090, so I dismiss his adverse possession claim with prejudice.[10] Because I have dismissed all of Ramos' quiet title claims, I also dismiss his request for a declaration that the deed of trust is expunged.

**B. I dismiss Ramos' claim in count two requesting that I declare Deutsche Bank cannot pursue accrued interest from Ramos to stop the foreclosure sale.**

The notice of default states that Deutsche Bank will stop the foreclosure proceedings if Ramos pays all past due payments plus permitted costs and accrued interest. ECF No. 40-5 at 2. That amount was $273,385.82 as of February 15, 2025 and will continue to accrue interest until

---

[8] Further, Ramos does not cite, and I could not find, any state that held a mortgagor's possession of a property became adverse to the mortgagee's before the foreclosure and sale of the property. *See Asnake v. Deutsche Bank Nat'l Tr. Co.*, 313 F. Supp. 3d 84, 88 (D.D.C. 2018) (under D.C. law, "a mortgagor and mortgagee cannot be hostile to one another until one party repudiates the relationship, such as if the mortgagor defaults and the mortgagee forecloses on the property"); *Hummel v. Rushmore Loan Mgmt. LLC*, No. CV-17-08034-PCT-DGC, 2017 WL 6554884, at *2 (D. Ariz. Dec. 22, 2017) (under Arizona law, "[a] mortgagee creates lien rights in the mortgage, but it passes neither legal nor equitable title to the mortgagee," and thus the mortgagor's possession was not adverse to the mortgagee's when the foreclosure sale had not yet occurred (simplified)); *Greene v. CitiMortgage, Inc.*, No 2:13-CV-219, 2014 WL 948878, at *2 (S.D. Tex. Mar. 11, 2014) (under Texas law "the date of foreclosure is the operative date for determining [the mortgagor's] adverse possession claim" against the mortgagee).

[9] I need not address the precise moment a mortgagor's possession becomes adverse to the mortgagee's. It suffices to say it has not occurred here.

[10] To the extent Ramos properly pleaded a claim for declaratory judgment against Wilmington seeking a declaration that he adversely possessed the property, he has failed to state a claim for the reasons explained in this section. I dismiss that claim with prejudice.

14

Ramos pays it or the foreclosure occurs. *Id.* Ramos seeks declaratory relief that Deutsche Bank's pursuit of interest on top of the original $171,000 loan is unenforceable under 11 U.S.C. § 502(b) or under this court's equitable power. Deutsche Bank argues that § 502 applies only in the bankruptcy context and does not prohibit the recovery of post-petition interest through foreclosure.

Bankruptcy Code section 502 governs which claims[11] are allowed against the debtor's estate in bankruptcy proceedings. *In re Ramirez*, Bk. No. 2:23-bk-09249-DPC, 2026 WL 747044, at *9 (B.A.P 9th Cir. Mar. 17, 2026). Section 502(b)(2) "sets forth a general rule" that disallows claims for "post-petition interest . . . against the estate." *Matter of W. Tex. Mktg. Corp.*, 54 F.3d 1194, 1197 (5th Cir. 1995). This rule "has no ramifications outside of the bankruptcy context." *In re Dow Corning Corp.*, 270 B.R. 393, 400 (Bankr. E.D. Mich. 2001).

Section 502(b) does not preclude Deutsche Bank from requiring Ramos to pay post-petition interest if Ramos wishes to stop the foreclosure. Deutsche Bank is not seeking to collect post-petition interest against him in a bankruptcy proceeding or in a post-bankruptcy *in personam* action in violation of the discharge order. It is foreclosing against the property *in rem*, consistent with its rights under the deed of trust which passed through bankruptcy. *Johnson*, 501 U.S. at 84. In doing so, it is giving Ramos the opportunity to pay a fee to stop the foreclosure, and that fee includes interest accrued since his default. Ramos does not give another statutory basis to declare the accumulation of interest unenforceable, so I dismiss this claim for declaratory relief. But I grant him leave to amend if he can cite to law that prohibits a mortgagee from requiring a mortgagor to pay accrued interest to stop a foreclosure proceeding when the mortgagor's personal loan obligation was discharged in bankruptcy.

---

[11] A claim against a bankruptcy estate is a "right to payment." 11 U.S.C. § 101(5).

**C. I dismiss Ramos' TILA claims in count four against Wilmington and Deutsche Bank.**

Ramos alleges that Wilmington and Deutsche Bank violated TILA, specifically 15 U.S.C. § 1637 and its implementing regulation, 12 C.F.R. § 1026.7, by failing to send Ramos periodic statements for each billing cycle. As the defendants noted, § 1637 governs open-end consumer credit plans, which Ramos' mortgage is not. Ramos concedes that filing his claim under § 1637 was a "typographical error" and instead argues in his oppositions that the defendants violated § 1639. ECF Nos. 58 at 7; 63 at 10.

I dismiss Ramos' TILA claims and their corresponding claims for declaratory relief for two reasons. First, Ramos asserts that the defendants violated § 1639 for the first time in his opposition, and "a deficient pleading cannot be cured by new allegations raised in a plaintiff's opposition to a motion to dismiss." *Int'l Game Tech., Inc. v. Fed. Ins. Co.*, No. 3:13-cv-00026-RCJ-WGC, 2014 WL 580876, at *4 (D. Nev. Feb. 13, 2014) (citing *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir.1998)). Second, even if he had properly pleaded a violation of § 1639, that TILA provision does not require that creditors send mortgagors periodic billing statements. Section 1639 mandates that creditors disclose specific information regarding the mortgagor's obligations under the loan and the loan's annual percentage rate "not less than 3 business days prior to the consummation of the transaction." 15 US.C. § 1637(b)(1). But it is not clear that it would be futile for Ramos to assert a violation of a different section of TILA, so I grant him leave to amend his TILA claims against Wilmington and Deutsche Bank.

////

////

////

16

**D. I dismiss Ramos' breach of contract claims in count five against Wilmington and Deutsche Bank.**

Ramos alleges that Wilmington and Deutsche Bank breached the deed of trust by not providing monthly mortgage statements or any other notices after his loan obligation was discharged in bankruptcy. He specifies that the defendants violated sections 9, 14, 15, 19, 20, and 22 of the deed of trust. But none of these provisions requires the defendants to provide him with periodic billing statements.[12] Ramos does not otherwise explain how the defendants' actions violated the deed of trust. Therefore, I dismiss his breach of contract claim with leave to amend because it is not clear that amendment would be futile.

**E. I dismiss Ramos' claims that Wilmington and Deutsche Bank breached the implied covenant of good faith and fair dealing in count five.**

Ramos next alleges that Wilmington and Deutsche Bank's failure to send monthly mortgage statements violated the implied covenant of good faith and fair dealing in the deed of trust. Wilmington argues that Ramos' complaint fails to allege how its conduct contravened the spirit or purpose of the deed of trust. Deutsche Bank argues that Ramos' complaint fails to support the claim with factual allegations.

Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are

---

[12] Section 9 sets out the lender's interest in the property and its rights under the security interest. ECF No. 40-1 at 8-9. Section 14 concerns the lender's ability to charge fees for the loan. *Id.* at 11. Section 15 describes how the lender must provide notices to the borrower and vice versa. *Id.* Section 19 establishes the borrower's right to reinstate the loan after acceleration. *Id.* at 12. Section 20 addresses sale of the loan, change of the loan servicer, and how the borrower must notify the lender of any grievances. *Id.* at 12-13. Section 22 addresses notices regarding default and acceleration of the loan. *Id.* at 14.

17

literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id*. "To establish a claim for breach of the implied covenants of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016).

Ramos does not explain how the defendants' failure to send monthly mortgage statements contravenes the deed of trust's spirit or purpose or denies his justified expectations under the deed of trust. Therefore, I dismiss his breach of the implied covenant claim with leave to amend because it is not clear that amendment would be futile.

**F.  I dismiss Ramos' fraud and conspiracy to defraud claims against Wilmington and Deutsche Bank in count six.**

Ramos asserts fraud and conspiracy to commit fraud claims against Wilmington and Deutsche Bank. Wilmington and Deutsche Bank argue the claims should be dismissed because the complaint does not allege they made a false representation to Ramos. To state a fraudulent misrepresentation claim, Ramos must plausibly allege that each defendant made a "false representation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). He has not done so, so his complaint fails to state a claim for fraudulent misrepresentation.

In his opposition, Ramos states that the defendants committed fraudulent concealment by not sending him notices regarding his billing statement, citing paragraphs 12, 13, and 47 of his complaint. Deutsche Bank argues that Ramos still fails to plead the claim with the particularity required under Federal Rule of Civil Procedure 9(b), and Wilmington argues that it and Ramos did not have a special relationship necessary for a fraudulent concealment claim.

18

"A defendant may be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (per curiam) (simplified).  For a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998), *abrogated on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001).  "With respect to fraudulent concealment, a duty to disclose arises from the relationship of the parties.  A fiduciary relationship, for instance, gives rise to a duty of disclosure." *Id.*  "A duty to disclose may also arise where the parties enjoy a 'special relationship,' that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence." *Id.* (citing *Mackintosh v. Jack Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993)).  The Supreme Court of Nevada "has never recognized the existence of a special or fiduciary relationship arising solely from a routine, arm's-length relationship between a borrower and a lender or successor lender," and "[o]ther courts have expressly held that the lender-borrower relationship is normally an arms-length transaction involving no special duty to disclose." *Davenport v. Homecomings Fin., LLC*, 130 Nev. 1169, 2014 WL 1318964, at *3 (Nev. Mar. 31, 2014); *see Ace Am. Ins. Co. v. Hallier*, No. 2:14-cv-00703-APG-NJK, 2015 WL 1326499, at *3 (D. Nev. Mar. 25, 2015) ("No special relationship generally exists between debtors and creditors absent exceptional circumstances" for a fraudulent concealment claim. (quotation omitted)).  The Supreme Court of Nevada has found a special relationship to exist in a lender-borrower relationship where the bank providing the home loan was also the seller of the house. *Mackintosh*, 855 P.2d at 554 ("A jury could conclude that buyers would not reasonably expect that a commercial lender . . . who was both selling and

19

financing the property, would provide long-term financing on property that would not likely sustain long-term ownership because of its defective condition.").

Ramos does not plausibly allege that Wilmington or Deutsche Bank had a duty to disclose to support a fraudulent concealment claim. They are not Ramos' fiduciaries because "[a]s a matter of law, lenders are not . . . fiduciaries of a borrower." *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1288 (D. Nev. 2010). Ramos has not pleaded facts to establish a special relationship between the parties because this is a lender-borrower relationship with no exceptional circumstances alleged. Wilmington was the lender and mortgagee, and Deutsche Bank is its successor in interest. I therefore dismiss his fraud claim against Wilmington and Deutsche Bank. I grant him leave to amend his fraud claim because it is not clear that amendment is futile whether Ramos can allege a special relationship with Wilmington and Deutsche Bank that is not an arm's-length lender-borrower relationship.

I also dismiss Ramos' conspiracy to commit fraud claims against Wilmington and Deutsche Bank because he failed to state an underlying claim of fraud. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005) (en banc) (per curiam), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008) (en banc) ("Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud."). Further, Ramos' allegations regarding the existence of an agreement between Deutsche Bank and Wilmington are too conclusory to state a claim for conspiracy. *See Sternberg v. Warneck*, No. 2:23-CV-01466-APG-EJY, 2024 WL 4804826, at *9,

20

12 (D. Nev. Nov. 14, 2024).[13]  Because it is not clear that amendment would be futile, I grant Ramos leave to amend his conspiracy to commit fraud claims to address these issues.

## G.  I dismiss Ramos' NRS § 107.028 claim against Sables in count seven.

Ramos alleges that Sables, Deutsche Bank's trustee, violated NRS § 107.028, which establishes duties and qualifications of trustees under a deed of trust.  Deutsche Bank, in its motion to dismiss, argued that because the deed of trust was not terminated, Sables acted in accordance with the statute.  It also stated that Sables was not properly served, without offering any further explanation.  It did not explain why it could raise arguments on Sables' behalf.  Ramos did not respond to Deutsche Bank's arguments.

Failure to file points and authorities in response to a motion to dismiss constitutes consent to the granting of the motion. LR 7-2(d).  Further, Deutsche Bank and Sables have an agency relationship, and Ramos' claim against Sables can affect Deutsche Bank's rights in the property by enjoining exercise of the power of sale. NRS § 107.028(7)(b).  Thus, I consider Deutsche Bank's motion for the purposes of this order and dismiss the NRS § 107.028 claim against Sables and its corresponding claim for declaratory relief.  But I grant Ramos leave to amend this claim because it is not clear that amendment would be futile.

## H.  I dismiss Ramos' claim that Deutsche Bank violated NRS § 107.200 et seq in count eight.

A beneficiary of a deed of trust must send a statement regarding the debt secured by the deed of trust including specified information upon request. NRS § 107.200.  Deutsche Bank argues that this claim fails because Ramos has not claimed any damages under the statute.

---

[13] *Modified on reconsideration on other grounds,* No. 2:23-cv-01466-APG-EJY, 2025 WL 1489701 (D. Nev. May 22, 2025), *modified on reconsideration on other grounds*, No. 2:23-cv-01466-APG-EJY, 2026 WL 1078868 (D. Nev. Apr. 20, 2026).

Ramos agreed and "waive[d]" this claim. ECF No. 63 at 22.  Therefore, I dismiss it and its corresponding claim for declaratory relief with leave to amend if he can plead damages. *See* LR 7-2(d).

**I.    I dismiss Ramos' claim for injunctive relief claim in count three.**

Ramos also seeks injunctive relief to enjoin the foreclosure sale.  Because I have dismissed all of Ramos' substantive causes of action, I dismiss this claim and its related claim for declaratory relief without prejudice. *See McNeil v. Verisign, Inc.*, 127 F. App'x 913, 914 (9th Cir. 2005).

**II.        DEUTSCHE BANK'S MOTION TO EXPUNGE THE LIS PENDENS**

Finally, Deutsche Bank moves to expunge the lis pendens.  Ramos failed to respond, so I grant the motion. LR 7-2(d).

**III.       CONCLUSION**

I THEREFORE ORDER that Wilmington's motion to dismiss **(ECF No. 38) is GRANTED.**

I FURTHER ORDER that Deutsche Bank's motion to dismiss **(ECF No. 40) is GRANTED.**

I FURTHER ORDER that Deutsche Bank's motion to expunge lis pendens **(ECF No. 41) is GRANTED**.  Deutsche Bank may record a copy of this order with the Clark County Recorder's office.  This order has the same effect as an expungement of the original notice.

/ / / /

/ / / /

/ / / /

/ / / /

22

I FURTHER ORDER that Ramos may file an amended complaint raising only the claims for which I granted leave to amend, and curing the deficiencies identified in this order, by May 26, 2026.  Failure to file an amended complaint by that date will result in the case being closed.

DATED this 2nd day of May, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

23